UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-116 (CEJ) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

## I. Procedural History

On December 26, 2007, plaintiff Robert Williams filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., with an alleged onset date of December 7, 2007. (Tr. 100). Plaintiff claimed disability due to pain in his back, neck, and wrists. (Tr. 19). After plaintiff's application was denied on initial consideration, he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 59-63).

The hearing was held on October 8, 2009. (Tr. 31). Plaintiff was represented by counsel. The ALJ issued a decision denying plaintiff's claim on February 26, 2010. (Tr. 16-24). The Appeals Council denied plaintiff's request for review on November 23, 2010. (Tr. 1-5). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.SC. § 405(g).

## II.  Evidence Before the ALJ

At the time of the hearing, plaintiff was 62 years old and lived with his wife, Bonnie Williams. (Tr. 36). His educational background includes a high school diploma and completion of a five-year electrician apprenticeship program. (Tr.34).

Plaintiff retired as an electrician on December 7, 2007. (Tr. 38). Plaintiff decided to retire because he was physically incapable of performing his job duties (Tr. 39). He stated that he had trouble laying cables underneath heavy floor tiles and that he could not work on a ladder or on the ground because of knee pain. (Tr. 38, 40). Plaintiff also stated that he was unable to perform overhead work due to back pain. (Tr. 40-41).

Plaintiff testified that he has suffered from back pain for fifteen years. (Tr. 41). He has pain in both his upper and lower back. (Tr. 46). Plaintiff cannot stand for longer than thirty minutes or sit for a long period of time before he starts experiencing back pain. (Tr. 44-45). Plaintiff goes to a chiropractor every other month. However, he testified that chiropractic treatment relieves his pain for only a couple of days. (Tr. 53).

Plaintiff also has pain in his hands and wrists. Plaintiff began having pain in hands when he tore a tendon on his left hand while at work. (Tr. 42). Plaintiff had surgery to replace the tendon, however, he stated that his thumb and first finger still get numb. (Tr. 42-44). Plaintiff also testified that his wrist motion "isn't as good as it should be." (Tr. 43). As a result, plaintiff has difficulty holding objects, using his arms above his head, buttoning his shirt, and lifting heavy items. (Tr. 43, 49,52, 54).

Plaintiff also has pain in his left leg. Plaintiff stated that he experiences stabbing pain and tingling in his left leg at least twice a week, which prevents him from walking

2

for long periods of time. (Tr. 47). To relieve his body pain, plaintiff takes muscle relaxers, pain pills, and applies heat and ice to painful areas. (Tr. 45, 53). Plaintiff also uses a TENS unit and a hot tub to loosen his muscles. (Tr. 45, 53). However, plaintiff testified that he still experiences cramps in his legs and arms after taking muscle relaxers and pain medication. (Tr. 45-46).

Plaintiff testified that he performs household chores, such as cleaning dishes, plumbing, vacuuming, and driving his wife to the grocery store. (Tr. 48-49). When he is not performing household duties, plaintiff spends a significant amount of time resting. (Tr. 50). Plaintiff testified that he typically rests for four or five hours a day. Plaintiff does not have any problems bathing or getting dressed in the morning. (Tr. 51). However, pain prevents him from participating in hobbies, such as woodwork and hunting. (Tr. 52).

The ALJ also heard testimony from plaintiff's wife and vocational expert, Gary Weimholt. (Tr. 37). Mrs. Williams testified that the family's income is approximately $1,500 per month, which includes the couple's pensions and her disability check. (Tr. 37). Mr. Weimholt provided testimony regarding the employment opportunities for an individual with plaintiff's age, work experience, and education. (Tr. 34). Mr. Weimholt opined that plaintiff cannot perform his past work as an electrician. (Tr. 54). However, Mr. Weimhold testified that plaintiff's skills are transferable at the light exertional level, which includes job opportunities as a wire harness assembler or an electronics assembler. (Tr. 35).

### III. Medical Evidence

Plaintiff was first seen by Timothy Lang, M.D. on December 9, 2004. (Tr. 183). Dr. Lang diagnosed plaintiff with a extensor pollicis longus tendon rupture. Plaintiff

3

underwent surgery to repair the tendon.  An evaluation conducted after the surgery, indicated that plaintiff had good thumb flexion.  Dr. Lang opined that plaintiff had a five percent impairment of the left upper extremity related to the thumb extensor, and released plaintiff from care without restriction.

In May 2005, plaintiff returned to Dr. Lang.  (Tr. 197).  Plaintiff complained of paresthesias and numbness in his left arm and hand.[1]  A physical examination revealed that plaintiff had pain in his left thumb and weakness in his left hand and biceps.  X-rays of the cervical spine also showed some arthritic change at C4-7.  Dr. Lang referred plaintiff to a  neurosurgeon and ordered a electromyogram and nerve conduction study (EMG).  (Tr. 197).

Results from the EMG revealed that plaintiff had moderate carpal tunnel syndrome and a moderate-to-severe slowing in the left ulnar nerve through the cubital tunnel.  (Tr. 198).  In a follow-up exam, Dr. Lang noted that there was improvement in plaintiff's left thumb and index finger.  (Tr. 190).  Physical examination of plaintiff's left hand also showed intact thenar abductors and an intact first dorsal interosseous.[2]  Based on this finding, Dr. Lang concluded that surgery was not needed on plaintiff's left hand.  (Tr. 190).

Plaintiff was seen by Dr. Lang again on July 14, 2006.  (Tr. 190).  This time plaintiff complained of a wrist injury.  Plaintiff stated that he began experiencing pain and numbness after leaning on his wrist at work.  (Tr. 190,202).  Dr. Lang ordered another EMG.  (Tr. 202).  The EMG revealed moderate carpal tunnel syndrome and

---

[1]Paresthesias is an abnormal sensation, such as burning, tingling, tickling or pricking.  See Stedman's Med. Dict. 1316 (27th ed. 2000).

[2]The dorsal interossei of the hand are muscles that occupy the space between the metacarpals.  See http://emedicine.medscape.com/article/1243669-overview

4

moderate-to-severe neuropathy at the wrist. (Tr. 194-196). To resolve plaintiff's wrist injury, Dr. Lang performed a right ulnar nerve release and a release of the Guyon canal. (Tr. 202). Prior to performing the surgery, Dr. Lang informed plaintiff that there was a possibility that he would continue to have problems with his wrists and that normal functioning of his wrists might never return. (Tr. 202). A post-surgery examination revealed improvement in plaintiff's wrists. (Tr. 189). Dr. Lang stated that plaintiff had reached maximum medical improvement and released plaintiff to return to work. (Tr. 189).

In February 2007, plaintiff complained of lower back pain. (Tr. 214). An MRI of plaintiff's lumbar spine was conducted on February 22, 2007 and showed degenerative changes in his spine. (Tr. 216-217). On February 6, 2008, plaintiff saw Lorena Roeling, D.C. for back pain. (Tr. 238). Following the examination, Dr. Roeling instructed plaintiff not to move heavy objects or perform overhead work. (Tr. 238).

In March 2008, plaintiff was seen by Fedwa Khalifa M.D. (Tr. 242). Plaintiff complained of chronic back pain, cramping in both hands, and wrist and neck problems. (Tr.242). Dr. Khalifa performed a physical examination and concluded that plaintiff had normal back and hand movements. (Tr. 244). Dr. Khalifa noted that plaintiff was capable of walking for one mile, standing for an hour and half, sitting for two hours, and lifting eighty pounds. (Tr. 242). In regard to plaintiff's wrist and hands, Dr. Khalifa observed that plaintiff was capable of writing, carrying a coffee cup, opening a jar, buttoning his clothes, and carrying twenty-five pounds over his head. (Tr. 242).

Plaintiff, however, continued to complain of wrist pain and returned to Dr. Lang in December 2008. (Tr. 265). Dr. Lang noticed swelling in plaintiff's right wrist and

5

concluded that a ganglion cyst could be the cause of plaintiff's discomfort.[3]  Dr. Lang did not recommend any treatment.  (Tr. 274).

In March, 2010, plaintiff was evaluated by James E. Schaberg, M.D.  (Tr. 278).  Dr. Schaberg noted that plaintiff had chronic lower back pain and moderate stiffness in the back.  Plaintiff also had difficulty with bending, stooping, lifting, and sitting.  (Tr. 279).  MRI results showed that plaintiff had significant spinal stenosis.[4]  (Tr. 279).

On March 30, 2010, plaintiff was seen by Christopher Hemmer, N.P., at Piper Spine Care.  (Tr. 287).  Plaintiff reported lower back pain and left leg numbness.  Mr. Hemmer scheduled plaintiff for an epidural steroid injection (ESI) of the lumber spine.  (Tr. 287).  A follow-up exam, showed that plaintiff was still having pain in his back, arms, and shoulder blades.  (Tr. 364).  Mr. Hemmer ordered an MRI of the cervical spine.  (Tr. 364).  The MRI showed mild to moderate degenerative changes and disc abnormalities at several levels.  (Tr. 347).

On April 30, 2010, plaintiff was evaluated by Kevin Coleman, M.D., with complaints of back and leg pain.  (Tr. 298).  At the time plaintiff was taking Nabumetone.[5]  After examining plaintiff, Dr. Coleman diagnosed him with lumbar radicular pain, myofascial pain, and lumbar degenerative disc disease.  (Tr. 299).  Plaintiff was scheduled for an ESI at L5-S1.  (Tr. 299).

---

[3]A ganglion cyst is a tumor or swelling on top of a joint or the covering of a tendon.  See http://www.emedicinehealth.com/ganglion_cyst/article_em.htm.

[4]Stenosis is a stricture of any canal.  Stedman's Med. Dict. 1673 (26th ed. 1995).

[5]Nabumetone is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis.  www.nlm.nih.gov.

       Plaintiff returned to Mr. Hemmer on May 3, 2010. (Tr. 363). Mr. Hemmer reviewed plaintiff's MRI results from April 2010, and diagnosed plaintiff with right arm radiculopathy, three level disc disease at 5-6, 6-7, and 4-5.[6] (Tr. 363). On June 9, 2010, plaintiff was seen by James Williams, M.D to evaluate numbness, paresthesias, and diminished sensation in plaintiff's right hand. (Tr. 369). Dr. Williams performed EMG testing on plaintiff and observed carpal tunnel syndrome and ulnar sensory neuropathy at plaintiff's wrists. (Tr. 371). Dr. Williams referred plaintiff to Dr. Lang. (Tr. 371).

Plaintiff returned to Dr. Lang on June 15, 2010. (Tr. 394). Dr. Lang opined that plaintiff had carpal tunnel syndrome and scheduled a carpal tunnel release and a Guyon's canal release. (Tr. 394). Medical records show that plaintiff was next seen by Dr. Coleman on June 22, 2010. (Tr. 310). Plaintiff was experiencing pain in the neck and right shoulder. (Tr. 310). Dr. Coleman prescribed another ESI. (Tr. 311).

## IV. The ALJ's Decision

In the decision issued on February 26, 2010, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through January 31, 2013.

2. Plaintiff has not engaged in substantial gainful activity since December 7, 2007, the alleged onset date.

3. Plaintiff has the following severe impairments: degenerative disk disease predominantly from L3-L4 through L5-S1 and status post bilateral wrist surgeries.

4. Plaintiff does not have an impairment or combination of impairments that

[6] Radiculopathy is a disorder of the spinal nerve roots; synonymous with radiculitis. See Stedman's Med. Dict. 1503 (27th ed. 2000).

meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except he is unable to perform overhead work.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on February 5, 1947 and was sixty-years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

9. Plaintiff has acquired work skills from past relevant work.

10. Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

11. Plaintiff has not been under a disability, as defined by the Social Security Act, from December 7, 2007 through the date of this decision.

(Tr. 16-24).

## V. Discussion

To be eligible for disability insurance benefits, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A) (2000). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." 42 U.S.C. §§423(d)(2)(A),1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner employs a five-step evaluation process, "under which the ALJ must make specific findings." Nimick v. Secretary of Health and Human Servs., 887 F.2d 864, 868 (8th Cir. 1989). The ALJ first determines whether the claimant is engaged in substantial gainful activity. If the claimant is so engaged, he is not disabled. Second, the ALJ determines whether the claimant has a "severe impairment," meaning one which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled. Third, the ALJ determines whether the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is, or equals, one of the listed impairments, he is disabled under the Act. Fourth, the ALJ determines whether the claimant can perform his past relevant work. If the claimant can, he is not disabled. Fifth, if the claimant cannot perform his past relevant work, the ALJ determines whether he is capable of performing any other work in the national economy. If the claimant is not, he is disabled. See 20 C.F.R. §§ 404.1520, 416.920 (2002); Bowen v. Yuckert, 482 U.S.137, 140-42 (1987).

A.   **Standard of Review**

The district court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion."

9

Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)).  If, after reviewing the record, the court finds it possible to draw two inconsistent from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011)(quotations and citation omitted).

### B. Plaintiff's Allegations of Error

Plaintiff asserts that the ALJ failed to: (1) ask the vocational expert whether his testimony was consistent with Dictionary of Occupational Titles (DOT), (2) identify transferable skills from plaintiff's past relevant work as an electrician, (3) provide audio recordings of the administrative hearing.  Plaintiff also contends that the ALJ's residual functional capacity  determination is not supported by substantial evidence.

### 1. Vocational Expert Testimony and Transferable Skills

Plaintiff first argues that the ALJ erred by failing to ask vocational expert, Gary Weimholt, whether his conclusion regarding plaintiff's transferable skills was consistent with the DOT.  Pursuant to SSR 00-4p, an ALJ has an affirmative duty to ask the vocational expert about any conflicts between their testimony and the DOT.  2000 WL 1898704.  Here, the ALJ did not ask the vocational expert whether his testimony conflicted with the DOT.  However, the Court finds that the ALJ's failure constituted nothing more than harmless error. The vocational expert testified that plaintiff has transferable skills at the light exertional level.  (Tr. 35).   The vocational expert identified a wire harness assembler and a electronics assembler as possible job opportunities at that level.   The DOT describes the occupation of a wire harness assembler and a electronics assembler as "light work."  See 1991 WL 679681; 1991

10

WL 679596.  As such, there is no conflict between the vocational expert's testimony and the DOT.  When there exists no conflict between a vocational expert's testimony and the DOT, then the ALJ's failure to question the vocational expert regarding possible conflicts is harmless.  See Renfrow v. Astrue, 496 F. 3d 918, 921 (8th Cir. 2007).

Plaintiff also argues that the ALJ erred by failing to identify transferable skills from plaintiff's past work as an electrician.  Social Security Ruling 82-41 does not require the ALJ or the vocational expert to identify a plaintiff's transferable skills. Tucker v. Barhart, 130 Fed. Appx. 67, 68 (8th Cir. 2005).  Thus, the Court finds that the ALJ committed no error.

### 2. Failure to Provide Audio Recordings

Next, plaintiff argues that the Appeals Council erred by failing to provide plaintiff with audio recordings of the administrative hearing.  This Court's review is limited to whether the ALJ's decision is supported by substantial evidence.  The Appeals Council's failure to provide audio recordings is not subject to review.

### 3. Residual Functional Capacity and Credibility Determinations

Plaintiff also contends that the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence.  The RFC is the most a claimant can do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011)(internal quotations, alteration and citations omitted).  "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."  Id.  "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant."  Id. Even though the RFC assessment draws from medical sources for support, it is ultimately an

11

administrative determination reserved to the Commissioner.  Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)(citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).

The ALJ found that plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with the exception of overhead work.  (Tr. 19).  Based on this RFC, the ALJ concluded that plaintiff could not perform his past relevant work, but could perform other work existing in significant numbers in the national economy.  (Tr. 23).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 23).

In determining plaintiff's RFC, the ALJ considered medical evidence and plaintiff's subjective complaints of pain.  (Tr. 19-21).  The ALJ also assessed whether plaintiff's allegations of pain in his back, neck, and wrists were fully credible.  (Tr. 20).  "[W]hen assessing whether a claimant's subjective complaints are credible, the ALJ must consider all of the evidence, including claimant's work history and observations regarding: (1) claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) the dosage, effectiveness and side effects of medication; (4) any precipitating and aggravating factors; and (5) claimant's functional restrictions."Polaski v. Heckler, 739 F.2d 1320, 1321 (8th Cir. 1984). The ALJ is not required to discuss each Polaski consideration, so long as its considerations were acknowledged and examined prior to discounting the claimant's subjective complaints.  See Lowe v.Apfel, 226 F.3d 969, 972 (8th Cir. 2000).

The ALJ determined that plaintiff's complaints concerning the intensity, duration, and limiting effects of his symptoms were not fully credible.  (Tr. 20).  The Court finds that substantial evidence supports this determination.  In 2008, plaintiff was seen by Dr. Khalifa for back pain.  (Tr. 244).  Dr. Khalifa performed a physical examination and

12

concluded that plaintiff had normal back movements. (Tr. 244). Dr. Khalifa also noted that plaintiff was capable of walking for one mile, standing for an hour and half, sitting for two hours, and lifting eighty pounds. (Tr. 242). After May 2008, plaintiff did not complain of back pain until March 2010, weeks after the ALJ made its determination. (Tr. 279).

Medical reports also showed improvement in plaintiff's hands. In 2004, plaintiff had surgery to repair his thumb. Dr. Lang evaluated plaintiff after the surgery and concluded that plaintiff had good thumb flexion and no longer had problems with his trigger thumb. (Tr. 183). Dr. Lang concluded that plaintiff had reached maximum medical improvement and released plaintiff from care without restriction. (Tr. 183). In 2006, Dr. Lang examined plaintiff's left hand again. Examination showed that plaintiff's thenar abductors and first doral interosseous were intact. (Tr. 190). Dr. Lang also noted that plaintiff's left thumb and index fingering were improving. (Tr. 190).

Plaintiff next argues that the ALJ failed to consider plaintiff's wrist impairments in the RFC. Specifically, plaintiff claims that the ALJ failed to discuss plaintiff's diagnosis of cubital and carpal tunnel syndrome.[7] Plaintiff further claims that the ALJ failed to include any limitations in the RFC reflecting his severe wrist impairment.

Plaintiff's contention that the ALJ ignored evidence of his wrist impairment is without merit. The ALJ discussed plaintiff's complaints of wrist pain and concluded that

---

[7]Medical records indicate that plaintiff was diagnosed with cubital and carpal tunnel in 2006 and in June 2010. Medical reports for June 2010 were submitted after the ALJ made its determination on February 26, 2010. The Appeals Council considered the June 2010 medical reports and found that there was no basis for changing the ALJ's decision. The Appeals Council also noted that plaintiff was found to be under disability beginning February 27, 2010. (Tr. 2). For these reasons, the Court will not consider this evidence in addressing plaintiff's claims.

plaintiff's wrist improved after surgery in 2006. (Tr. 21). The Court finds that this determination is supported by substantial evidence. After examining plaintiff's wrists in October 2006, Dr. Lang concluded that plaintiff had reached maximum medical improvement and could be released to work. (Tr. 184, 189). Plaintiff also testified that he was capable of doing activities that would involve his wrist, such as plumbing and vacuuming. (Tr. 48-49). Furthermore, the ALJ did account for plaintiff's wrist and hand problems when determining the RFC limitation. The ALJ gave plaintiff the benefit of the doubt and found that he has weakness in his hands, and therefore, cannot perform overhead work. (Tr. 23).

## VI. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in his brief in support of complaint [#9] is **denied**.

A judgment consistent with this Memorandum and Order will be entered separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2012.